35 C.C.P.A.(Patents)

## Application of HARTLOVE.

### Patent Appeal No. 5423.

Court of Customs and Patent Appeals.
Feb. 10, 1948.

Semmes, Keegin, Beale & Semmes, of Washington, D. C. (Harry H. Semmes and Irvin S. Thompson, both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds and H. S. Miller, both of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

It is said in the specification that the application for patent here involved "relates to gel and more particularly has reference to the handling of the gel during the manufacturing thereof." Eight claims were before the Primary Examiner who rejected all of them. Appeal was taken to the Board of Appeals as to all of them, but at the hearing before it the appeal was dismissed as to two of them—Nos. 7 and 8, respectively—and the board affirmed the examiner's rejection of the other six. Appeal to this court was thereupon taken, the appeal being limited, however, to claim numbered 3 and 6, which read as follows:

"3. A method of removing hydrogel from an invertible setting container comprising inserting the discharge end of an air ejecting conduit into said gel and in engagement with the bottom of the container, ejecting air from said conduit to loosen the adhesion of the gel to the wall of the container, and then inverting the container.

"6. A method of reducing the adhesion of a hydrogel with the wall of a setting container comprising inserting the discharge end of an air ejecting conduit into said gel and in engagement with the bottom of the container, ejecting air from said conduit to loosen the adhesion of the gel to the wall of the container."

174

It will be observed that both are method claims. Claim 3 is for removing hydrogel from an invertible setting container and claim 6 is for reducing the adhesive of a hydrogel with the wall of a setting container, nothing being said as to the container being invertible.

The operation is a very simple one. The specification and drawings disclose an apparatus for its performance. A hydrosol is run into a receptacle designated as a "tub" in the specification. The tub is of "cypress or other suitable wood or other material which will withstand the chemical action of the hydrosol and the wear and tear of handling the same." In the tub the hydrosol which is an aqueous solution becomes set or gelled and is then called hydrogel. Appellant inserts a tube which the claims designate as an "air ejecting conduit" through the hydrogel, the open end of the tube resting on the bottom of the tub. Through a flexible hose attached to the outer end of the tube air is supplied under pressure which flows between the surfaces of the walls of the tub and the hydrogel. It is taught that this action "will reduce the adhesion between the hydrogel and the walls of the tub and will split and crack the gel free from the tub, thereby facilitating removal of the hydrogel from the tub."

We deduce from the application that the tubs, which are of greater diameter at their tops than at their bottoms, are so suspended by appropriate means that they may be inverted easily to permit the gelled substance to drop from them after the air has been applied.

In his statement following the appeal to the board, the examiner did not discuss claims 3 and 6 separately from the other method claims (1, 2, 4, and 5), nor did the board treat them separately in its original decision. Appellant, however, filed a request for reconsideration, saying: " * * * it is submitted that applicant, if not entitled to broad claims 1, 2, 4 and 5, is certainly entitled to the protection afforded by the limited claims 3 and 6 as a reward for his contribution to the art."

One of the references cited seems to have been applied only in the rejection of apparatus claims 7 and 8 which are not before us. So, the only pertinent references are a patent and a publication listed in the decision of the board as follows: Bratring, 2,217,213 Oct. 8, 1940; Newill, "Good Food and How to Cook It", page 265.

In appellant's request for reconsideration by the board, it was asserted, in substance, that there was no disclosure of the limited series of steps in claims 3 and 6 "by anyone or more of the references of record." The board's attention was also directed to an affidavit which had been filed in the case after the final rejection by the examiner and on the same day that the appeal to the board was taken.

In its decision on the request for reconsideration, in which it adhered to its original conclusion, the board stated that it had again considered the affidavit and was not convinced thereby of error on the part of the examiner. It further said: "Appellant points out in his request for reconsideration that a number of his claims are of broad scope and suggests that claims 3 and 6 should be allowed. The appeal, however, was taken on all of the claims and we find no withdrawal of record as to claims 1, 2, 4 and 5. Furthermore, we do not find anything inventive in providing a conduit for the injection of air into the container."

The Bratring patent is for an apparatus (all its claims are apparatus claims) designed for using compressed air to remove molded articles made of cellulose or other plastic substances from the forms on which such articles are molded. The forms are referred to in the specification as molds. They may be of glass and may be hollow. When not hollow there is a duct or bore for the passage of air. The duct extends through the center from the bottom to the top and through a flange above the top. When hollow the air passageway or duct is arranged adjacent the outer walls of the mold. In the bottoms of the molds there are holes for the passage of air. In operation, the molds are immersed in the plastic substance and the article after being formed on the outside of the mold is dried. Compressed air is then released by a mechanism which is part of the apparatus. The air under pressure passes through the ducts and through the holes in the bottom of the

molds and thus forces the article from the mold.

The specific feature of the Newill cookbook cited as a reference relates to the matter of removing jellied tomato bouillon from a receptacle, the following being the method given: "Unmold by dipping mold [receptacle] into warm (*not hot*) water for a second or two, then loosening the jelly from the sides of the mold with a thin knife. Place plate over top of mold and invert quickly. If jelly does not come out at once, cover inverted mold with cloth wrung out of hot water, and it soon will." (Italics quoted.)

The examiner, although stating that the Bratring patent was cited merely to show that it is old to eject molded articles from molds by use of compressed air, rejected claims 1–6 "as being unpatentable over Bratring." He also rejected them "as being unpatentable over the cook-book disclosure." In connection with the latter ground of rejection he referred to the use of a knife in loosening the jelly from the side of the molds and said: "Obviously the purpose and function of the blade is to admit air, since otherwise the atmospheric pressure would hold the gel firmly in the mold."

The board apparently deemed the claims rejectable on the Newill reference alone, but whether it actually agreed with the examiner that the "purpose and function of the blade is to admit air" is not clear. Its statement reads: "The Newill publication describes the well known method of removing jellied material from containers in connection with cooking. The jelly is loosened from the sides of the mold by a thin knife after which the mold is inverted. We agree with the Primary Examiner that claims 1 to 6 do not recite any method which is patentable over the method disclosed in this reference. As indicated in the statement quoted above from the application on appeal, it is clear that the purpose of injecting fluid into the receptacle at the bottom thereof is to break the seal between the container and the gel and this is the object of such methods as the method disclosed in the Newill reference. The claims do not distinguish from the prior art method by specifying the material to be removed from the container.

"The Bratring patent is at best cumulative to the Newill reference in connection with claims 1 to 6."

After a study of the prior art cited here, we are convinced that the relationship between the operation of the patent apparatus and appellant's method, and also the relationship between the method described in the cookbook by getting jellied soup out of a receptacle and appellant's method of removing or reducing the adhesion of industrial hydrogel from tubs are so remote that there is no reasonable ground for believing that the prior art would suggest appellant's method to one skilled in the art.

We do not agree with the statement of the examiner to the effect that obviously the knife is used in the cookbook process to admit air in order to overcome extraneous atmospheric pressure. At least we should not suppose that to be the sole purpose of its use. It is surely not unreasonable to suppose that its use of itself destroys the adhesion between the jellied soup and the walls of the container. That done, the expansion of the container by the heat applied before the knife is used ordinarily liberates the jelly so that it falls upon the plate beneath it. If that is found insufficient more heat, not more air, is applied. We doubt whether the air admitted as a result of the use of the knife exerts any force which tends to move the jelly in the slightest degree. At any rate, even if the examiner be wholly right and we wholly wrong as to the purpose of using the knife as taught by the cookbook there certainly is no teaching of using compressed air. As we view it, forcing the hydrogel from the tubs, or reducing its adhesion to the walls by the use of air released under pressure is the gist of appellant's method.

The Bratring patent does disclose the release of compressed air which exerts a force that removes an article from the outside of a form or mold used to give shape to the article. Appellant teaches the use of air for exerting a force that will remove a gelled substance from a container or reduce the adhesion of the substance to the walls of the container. From the nature of the different articles acted upon by the air it would seem apparent that the adhesion between the patent article and the mold is

different from that between the hydrogel and the wall of the tub. The cookbook has no teaching of the use of air for any purpose.

For the reasons indicated, we disagree with the conclusion reached by the tribunals of the Patent Office and the decision of the board is reversed.

Reversed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.